UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

       Plaintiff,

Case No. 1:04-CR-50

v.

Hon. Richard Alan Enslen

DOUGLAS ALAN BARTON,

**OPINION**

       Defendant.
_____/

      This matter is before the Court on Defendant Douglas Alan Barton's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence. The Motion was originally answered by the United States, but because it supplemented the record by filing the affidavit of attorney Paul L. Nelson, the Court has also allowed the filing of a supplemental answer and a supplemental reply. The supplemental reply was recently filed by Defendant.[1] The Court now reviews all the briefing received pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Upon such review, the Court finds that evidentiary hearing is unwarranted and the Motion should be denied on each of the six grounds asserted.[2]

---

    [1]Defendant argues that he was not provided a copy of attorney Nelson's Declaration - even though his Reply discusses the content of the Declaration in some detail. The Court does not view this defect (if it occurred) as significant since the Reply discusses the content of the Declaration. Nevertheless, the Court will order the Clerk to mail a copy of the Declaration to Defendant to permit the filing of a timely and proper motion for reconsideration, if appropriate.

    [2]An evidentiary hearing is not required when the record conclusively shows that a movant is not entitled to relief. *See Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003); *Arredondo v. United States*, 178 F.3d 778, 782-83 (6th Cir. 1999); *see also Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1997).

**BACKGROUND**

Defendant, with the assistance of attorney Tonya Krause-Phelan, pled guilty to three counts of bank robbery on August 11, 2004. (Plea Tr. 1-16.) The guilty pleas were made without the benefit of a plea agreement. (*Id.*) The guilty pleas were then accepted. (*Id.* at 15-16.)

Defendant's sentencing hearing was initially scheduled for November 16, 2004, but the sentencing hearing did not occur because attorney Krause-Phelan missed the hearing. She was then discharged by Order of November 16, 2004 and the sentencing hearing was to be rescheduled with sufficient time to allow newly-appointed counsel, Paul L. Nelson, to prepare and appear. (*See* Dkt. No. 35.) In the interim, the Court received a letter dated December 11, 2004 from Defendant which expressed dissatisfaction with his guilty pleas because of Ms. Krause-Phelan's conduct and requested withdrawal of the guilty pleas. (Letter of Dec. 11, 2004 at 2.)

Subsequent to the December letter, Defendant's sentencing hearing was scheduled for February 8, 2005 (*see* Dkt. No. 43) and the United States Supreme Court issued its *Booker* decision in January 2005. *See United States v. Booker*, 543 U.S. 220 (2005). In advance of the new sentencing date, the Government moved for an upward departure from the guideline range. (*See* Dkt. No. 45.) Defendant also wrote the Court a letter dated February 7, 2005 in which he took "full responsibility" for his offense conduct, but requested a lenient sentence premised in part on his recent treatment of his mental health problems. (Letter of Feb. 7, 2005 at 1-4.) Defendant was given an opportunity to speak at sentencing regarding his correspondence and any other subject, and he confirmed that he desired to proceed with the sentencing because he wished to receive treatment within federal prison facilities. (Sentencing Tr. 31-35, 38-40.)

At sentencing, Defendant's guideline range was calculated, over Defendant's objection, at level 24, category VI, equating with a guideline range of 100 to 125 months imprisonment. The Government moved for an upward guideline departure, which was denied, and Defendant's counsel asked that Defendant's substance abuse and mental health history be considered as a basis for leniency. Defendant was sentenced to a term of 168 months incarceration (in excess of the advisory guideline range). This sentence was affirmed on appeal. The Sixth Circuit Court of Appeals' decision rejected Defendant's arguments that the retroactive application of *Booker* to Defendant violated his Due Process and *Ex Post Facto* Clause rights.[3] *United States v. Barton*, 455 F.3d 649, 652 (6th Cir. 2006). The Sixth Circuit also determined that the sentence imposed was "reasonable" under 18 U.S.C. § 3553, despite that it exceeded the guideline range, given Defendant's extensive need for treatment and his offense conduct. *Id.* at 659-60.

After the issuance of the Sixth Circuit decision, defense counsel sought a writ of *certiorari* from the United States Supreme Court by petition of November 1, 2006, but the same was denied

---

[3]Defendant argues that the application of *Booker* was impermissibly "retroactive" because the *Booker* decision occurred long after his offense conduct. While it is true that the *Booker* holding post-dated his offense conduct and plea, this argument overlooks the legal framework in which the Supreme Court has analyzed such claims. In the *Booker* decision, the remedial portion written by Judge Breyer indicated that the decision would be applied to all subsequent cases and prior cases on direct review. *Booker*, 543 U.S. at 268. In reaching this conclusion, a majority of the Supreme Court analyzed the ruling as a "'new rule for the conduct of criminal proceedings . . . to be applied retroactively to all cases . . pending on direct review or not yet final[.]'" *Id.* (quoting *Griffith v. Kentucky,* 479 U.S. 314, 328 (1987).). The *Griffith* decision did so while overruling the Court's previous precedent that allowed for an exception to retroactivity in cases in which the new procedural rule represented a "clear break" from the past. In following this reasoning, a majority of the Supreme Court made explicit that it was aware of the logic for applying a new procedural ruling retroactively as to pending cases even though some defendants might be disadvantaged and surprised by that application. This reasoning supports the Sixth Circuit's conclusion that application of *Booker* did not violate Defendant's *Ex Post Facto* and Due Process Clause rights.

by Order of December 4, 2006. *Barton v. United States*, 127 S. Ct. 748, 749 (U.S. 2006). Neither a motion for rehearing *en banc* or for panel rehearing, under Federal Rules of Appellate Procedure 35 and 40, was filed by defense counsel according to the public docket of case no. 05-1229.

## SECTION 2255 LEGAL STANDARDS

In *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999), the Sixth Circuit summarized the basic legal standards for relief under section 2255 as follows:

> To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637-638, 113 S. Ct. 1710, 1721-1722, 123 L. Ed. 2d 353 (1993). To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (citing *Hill v. United States*, 368 U.S. 424, 428, 82 S. Ct. 468, 471, 7 L. Ed. 2d 417 (1962)).

*Id*. Technical violations of the sentencing guidelines do not warrant relief under the statute. *See Grant v. United States*, 72 F.3d 503, 505-6 (6th Cir. 1996) (holding that a guideline calculation dispute was not a "constitutional error" warranting relief under section 2255).

Relief under section 2255 is not intended to substitute for an appeal. *United States v. Timmreck*, 441 U.S. 780, 784 (1979). The movant must ordinarily show "cause" for failure to raise the issue on direct appeal and "actual prejudice" resulting from the error. *Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000) (citing *United States v. Frady*, 456 U.S. 152, 164-67 (1982)).

Under certain circumstances, constitutionally ineffective assistance of counsel may constitute both a violation of Defendant's Sixth Amendment rights and "cause" for the failure to raise issues on direct appeal. The United States Supreme Court's bell-weather decision on effective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to establish

ineffective assistance of counsel, the movant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Id.* at 687. In gauging counsel's performance, the Supreme Court emphasized that,

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689 (citations omitted). In determining prejudice, the courts are to determine whether, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

## LEGAL ANALYSIS

**1. Grounds One and Two–Ineffective Assistance of Appellate Counsel**

Defendant's first two arguments, which are related, are that appellate counsel was ineffective because he failed to move the panel or circuit for rehearing of the decision, particularly since the panel decision involved an affirmative misstatement of fact–"that *Blakely* was decided before defendant committed the robberies here."[4] *United States v. Barton*, 455 F.3d 649, 654 (6th Cir. 2006). This statement was a misstatement of fact because the last robbery in question was

---

[4]Referring to the decision in *Blakely v. Washinton,* 542 U.S. 296 (2004).

committed on April 15, 2003 whereas the Supreme Court's *Blakely* decision was announced on June 24, 2004. This misstatement is related to Defendant's arguments that the use of the *Booker* sentencing procedures to his disadvantage violated his Due Process Clause and *Ex Post Facto* Clause rights given that those procedures were announced after both the commission of his crimes and his guilty pleas.

As noted by the United States, it is far from clear that the above misstatement by the Sixth Circuit was a significant one. First, the Sixth Circuit also explained its decision based on additional reasoning which was not dependent on the offense concluding after the *Blakely* decision. Second, while the precise statement was false, the sense of the paragraph was true. It was true that the Supreme Court started its march toward the *Booker* decision in 2000 with its decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), as explained in *Booker*. Thus, at the time of the offense conduct, it was within the realm of reasonable argument that *Apprendi* might cause some change to the operation of a mandatory guideline system which involved assignment of penalties based on guideline sentencing findings which were not proven to a jury or incorporated as part of a defendant's guilty plea. The fact that the Court of Appeals tied that argument to *Blakely* as opposed to *Apprendi* was a misstatement, but not one which would alter the merits of the ruling.

Further, Defendant's arguments assume that he had a right to demand that appellate counsel file a discretionary motion for rehearing and the failure to file now entitles him to some relief pursuant to 28 U.S.C. § 2255. Neither conclusion follows. The sparse federal authority on the right of a defendant to demand a discretionary motion for rehearing does not support Defendant's position. The Sixth Circuit in *United States v. Self*, citing *Ross v. Moffitt*, 417 U.S. 600 (1974), held that there is no constitutional right requiring appointed counsel to file a petition for writ of *certiorari*. 574

F.2d 363, 365 (6th Cir. 1978). While the *Self* court went onto to proclaim a statutory right under 18 U.S.C. § 3006A to have the assistance of appointed counsel in filing a petition for writ of *certiorari* on request, neither the *Self* Court, or any other decision, has extended that right to the filing of a meritless petition for rehearing with the Court of Appeals.

Furthermore, in 1994, the Supreme Court heard the case of an attorney who was caught in a conflict with a Fourth Circuit rule requiring him to file a petition for writ of *certiorari* on request of an indigent defendant when the Supreme Court by its own rules would sanction him if the request were frivolous. The Supreme Court resolved this issue by directing the Fourth Circuit to revisit its rule, if necessary, to relieve defense counsel from filing frivolous habeas petitions. *Austin v. United States*, 513 U.S. 5, 6-7 (1994). This disposition made plain that the Supreme Court does not view the Criminal Justice Act provisions as requiring the filing of a frivolous *certiorari* petition. Indeed, the Sixth Circuit is of like mind in that its rule only requires the filing of a *certiorari* petition when "in counsel's considered judgment, there are grounds for seeking Supreme Court review." 6th Cir. Supp. P. R. 101(g). *A fortiori*, then the CJA does not require the filing of a petition for rehearing because of a mistake in a decision when the correction of the mistake would not result in a different legal outcome. This view is supported by the Third Circuit's decision in *United States v. Coney*, 120 F.3d 26, 28 (3d Cir. 1997). Therein, it recognized that the filing of such a petition for rehearing was discretionary, that such petitions are disfavored by the Court of Appeals, and that filing was only required if in the considered judgment of the attorney the discretionary motion was non-frivolous. *Id.*

In this case, appellate counsel acted with good and considered judgment in protecting Defendant's rights on appeal by filing a petition for *certiorari*. To suggest that this professional

judgment was errant because counsel failed to file a plainly meritless petition for rehearing misunderstands both the record and the appropriate role of appellate counsel in providing attorney services without cluttering the courts with plainly meritless motions.

Finally, on this point, both the *Self* decision and the *Coney* decision recognized that any relief from a failure of appellate counsel to file a discretionary rehearing motion or petition for *certiorari* must be sought by motion of the defendant to the Court of Appeals as opposed to a section 2255 motion. This was a wise conclusion because Congress, in its wisdom, has directed that appellate jurisdiction of criminal cases be exercised by the Court of Appeals (and the Supreme Court by writ of mandamus and *certiorari*) and not by the District Court. *See generally* 28 U.S.C. §§ 1251-1330; 13 Wright, Miller & Cooper, *Federal Practice & Procedure 2d* §§ 3501-22 (West 1984 & 2008 Supp.). This procedural mechanism also tends to thwart stale claims of defendants who, long after the time for filing a petition for rehearing, fault counsel for failing to have done so. As such, the *Self* and *Coney* decisions do not suggest relief by this Court under the auspices of section 2255.

**2. Ground Three–Failure of Defense Counsel to Request Plea Withdrawal**

Petitioner also faults defense counsel for failing to bring to the District Court's attention Petitioner's request to withdraw his guilty pleas contained in his December 11, 2004 letter. From a matter of defense strategy, this was hardly surprising because, as is clear from the sentencing transcript, both defense counsel and Defendant had determined, in the interim, to proceed with the sentencing hearing. A baseless motion to withdraw a guilty plea after acceptance, under Fed. R. Crim. P. 11(d)(2), would not have helped Defendant and would have undermined Defendant's position (in his February 7, 2005 letter and his sentencing statements) that he accepted responsibility

for his offense conduct and was ready to work toward rehabilitation in prison. No reasonable defense counsel, in this situation, would have sponsored the motion to withdraw the guilty pleas now advocated by Defendant. The failure to file such a meritless motion to withdraw the guilty pleas does not offend the Sixth Amendment standards under *Strickland*. *United States. v. Martin*, 45 Fed. Appx. 378, 381-382 (6th Cir. Aug. 21, 2002) (holding that failure to file a meritless motion to withdraw a guilty plea "cannot be deemed ineffective assistance of counsel.") While it would have been better for defense counsel to have formally withdrawn the earlier letter request, that failure does not entitle Defendant to habeas relief, especially since Defendant's statements and conduct during sentencing indicated his clear intent to proceed with the sentencing process. *See also Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

### 3. Grounds Four and Six–Defense Counsel's Failure to Appear for the First Sentencing and the Later Application of the Upward Sentencing Variance

Defendant argues that his first counsel, Tonya Krause-Phelan, was ineffective in failing to appear at the first sentencing hearing and that this failure resulted in him receiving a higher sentence under the forthcoming *Booker* regime. It is true that defense counsel's failure to attend the hearing was a violation of professional standards and errant attorney conduct. Nevertheless, it is not true that Defendant was prejudiced by this failure. Defendant was appointed competent substitute counsel who acted reasonably and within the *Strickland* standards of competent advocacy. The delay did result in the application of *Booker* to Defendant, but, as the Court of Appeals has already determined, this application was consistent with the directives of the Supreme Court and was subject to a reasonableness review which prevented the imposition of unreasonably punitive sentences. Quite simply, Defendant had no legal right to the application of the now discredited pre-*Booker* regime to

him, and the failure of counsel to insure the application of that regime to him did not result in prejudice under *Strickland*.

Similarly, Defendant has shown no entitlement to relief because the District Court imposed a sentence in excess of the advisory guideline range. Defendant received the benefit of competent argument and counsel as to the sentence imposed and the Court of Appeals has already determined that such sentence is consistent with the *Booker* legal standards applicable under section 3553. The sentence imposed was a consequence of Defendant's crimes, criminal history and his need for extensive mental health and substance abuse treatment in prison. Defendant does not meet the standards under *Strickland* for relief.

**4. Ground Five–Breach of the Plea Agreement**

Defendant argues that he entered into a plea agreement calling for the imposition of a guideline sentence. This argument is factually mistaken. The record conclusively shows that Defendant pled guilty without the benefit of a plea agreement. (Plea Tr. 16.) As such, this argument fails.

**CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253, this Court must determine whether to grant a certificate of appealability as to each of the issues raised. The Court has reviewed the issues individually as required by the decisions in *Slack v. McDaniel*, 529 U.S. 473 (2000) and *Murphy v. Ohio*, 263 F.3d 466, 466-67 (6th Cir. 2001). Upon review, this Court finds that reasonable jurists would not find Defendant's positions debatable with respect to the substantive grounds for denying relief as to all

issues asserted.  *See Slack*, 529 U.S. at 482-85; *see also Porterfield v. Bell*, 258 F.3d 484, 486 (6th Cir. 2001).  Therefore, a certificate of appealability will be denied.

## CONCLUSION

For the reasons given, a Final Order shall issue denying Defendant Douglas Alan Barton's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence.  The Final Order shall also deny a certificate of appealability as to all issues pursuant to 28 U.S.C. § 2253(c)(3).

|  |  |
|---|---|
| DATED in Kalamazoo, MI:<br>      June 2, 2008 | /s/ Richard Alan Enslen<br>RICHARD ALAN ENSLEN<br>SENIOR UNITED STATES DISTRICT JUDGE |